UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER D. M.,[1]<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 18-cv-02004-SK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 15, 20 |

This matter comes before the Court upon consideration of the motion for summary judgment by Plaintiff Christopher D.M. ("Plaintiff") and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, and relevant legal authority, and the record in the case, the Court hereby GRANTS Plaintiff's motion and DENIES the Commissioner's cross-motion for summary judgment for the reasons set forth below. The Court REMANDS the action for further proceedings.

**BACKGROUND**

Plaintiff was born on December 23, 1988. (Administrative Record ("AR") 219.) On August 15, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging he was disabled starting on June 13, 2013. (AR 219-20, 221.) On August 15, 2013, Plaintiff also filed a claim for supplemental social security income. (AR 221-23.)

On May 23, 2016, Plaintiff, accompanied by counsel, testified at a hearing before the

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Law Judge ("ALJ"). (*Id.*) Plaintiff and vocational expert Pamela A. Bowman both testified at the hearing.

The ALJ issued an opinion on November 2, 2016, denying benefits to Plaintiff. ALJ found that Plaintiff satisfied the requirements of the Social Security Act through March 31, 2017 and that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, his alleged onset date. (AR 27.)

The ALJ further found that Plaintiff has the following severe impairments: mood disorder, bipolar disorder, sensory integration disorder, and Asperger's syndrome. (AR 27.) The ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> the claimant's work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast paced production requirements; involving only simple, work-related decisions; and with few, if any work place changes. The claimant can have only occasional interaction with the public and only occasional incidental interaction with coworkers with no tandem tasks and only occasional supervision. The claimant can be exposed to no more that noise at level 3 at work.

(AR 29.)

Plaintiff's treating psychiatrist, William Sastry, M.D., wrote a letter dated September 26, 2014, in which he stated:

> [Plaintiff] is a patient who I have evaluated . . . for treatment and recommendations related to diagnoses of Intellectual Disability NOS (i.e., a variant of Sensory Processing Disorder), AHDH . . . and Generalized Anxiety Disorder. . . .
>
> Although [Plaintiff] presents as well-spoken, and likely has a high IQ, his mental health symptoms have affected his performance in school and workplace settings for most of his life. His sensory integration and generalized anxiety symptoms result in his being overwhelmed emotionally in otherwise benign workplace or classroom settings . . . . Moreover he has trouble focusing on seemingly simple tasks as his mind will become preoccupied with non-task-related topics.
>
> While he might seem OK at the beginning of a work or school placement, within weeks he is overwhelmed and has to drop out. This pattern has played out over and over in [Plaintiff's] life. Recently, [Plaintiff] had to drop out of UC Berkeley due to mental health symptoms. Additionally, he has been unable to maintain regular jobs in workplace settings as well, holding jobs for no longer than weeks

at a time. For example, in his last short-term job, he only worked ten hours/week but still missed multiple days due to being overwhelmed.

In conclusion, in my medical opinion, [Plaintiff] is disabled based on his mental health symptoms. I do not believe based on the above history, he can hold any kind of meaningful job at this time.

(AR 492.)

Sastry wrote another letter dated September 1, 2015, in which he stated:

[Plaintiff's] case is a difficult one because his initial presentation belies his dysfunction and often leads people to underestimate the significant nature of his symptoms. On interview he may present well, with fairly good vocabulary and an above average IQ, when sitting for a brief interview. However, having treated [Plaintiff] at intervals over the past 1 5[2] years, I can honestly say he has to expend an inordinate amount of energy to engage in what would appear to most people to be ordinary social encounters. For example, [Plaintiff] will often take hours to mentally prepare for a routine social encounter (*e.g.*, job interview . . . or for a shift teaching kids at the climbing wall). Afterward, he will often also require a cool-down period lasting up to several hours, during which he needs to sit in absolute quiet, undisturbed so that can calm down enough to move on with daily functioning. In essence then, he might require up to 6 hours combined for preparation and cool-down for a 2-3 hour social encounter. . . . .

. . . [Plaintiff] has symptoms consistent with Sensory Processing Disorder, or Sensory Integration Disorder, as well as Generalized Anxiety symptoms, the combination of which result in his being overwhelmed emotionally in otherwise benign workplace or classroom settings (*e.g.* large group activities, multitask demands, or loud background noise)[.] Moreover he has trouble focusing on seemingly simple tasks as his mind will become preoccupied with non-task related topics.

Historically, due to the above problems, [Plaintiff] has failed to progress in normal school environments, and eventually has to drop out. This pattern has played out over and over in [Plaintiff's] life, including his having to drop out of UC Berkeley in 2013-14 due to his mental health symptoms. Only recently in 2014, taking classes at a special program at St. John's University, has [Plaintiff] been able to manage his symptoms well enough to complete his work. Even then, he apparently expends an inordinate amount of energy to perform routine work.

Likewise, [Plaintiff] continues to struggle with same symptoms at work, resulting in his consistent inability to keep a job. Although he might be able to get a job with a good interview, he has consistently been unable to maintain regular jobs in workplace settings, often

---

[2] In the letter, there is a space between the 1 and 5. It is unclear if the space is a typographical error or a missing period ("."). A missing space means that Sastry treated Plaintiff for 15 years, but a missing period means that Sastry treated Plaintiff for 1.5 years. (AR 496.)

3

> holding a job for no more than a few weeks before becoming too overwhelmed with stress. Prior to starting school last year, for example, I believe he had a short-lived, short-term job, where he only worked 10 hours/week but still missed multiple days due to being overwhelmed.
>
> In conclusion, in my medical opinion, [Plaintiff] is disabled based on his mental health symptoms. I do not believe that based on the above history, he can hold any kind of meaningful job at this time. Additionally, based on the history provided by patient and family, I do not believe that in the future he could consistently maintain any level of work, even part-time low-level manual labor jobs, due to his mental health symptoms[.] He easily becomes overwhelmed in all environments and in any task requiring his concentration for more than 15 minutes at a time, resulting in increasing stress which is deleterious for his physical and mental well-being.

(AR 469-70.)

The ALJ summarized Sastry's opinion as finding that Plaintiff was disabled due to his mental health symptoms and could not hold any job. (AR. 33.) He noted that Sastry stated that Plaintiff easily becomes overwhelmed in any task requiring his concentration for more than fifteen minutes at a time. (*Id.*) The ALJ gave little weight to Sastry's opinion because it was an opinion that exceeded his expertise as a physician and was reserved to the Commissioner. (*Id.*)

Jonathan Howard, Psy.D., a consultative psychological examiner, examined Plaintiff on February y, 2014. (AR 439.) Howard noted Plaintiff had no difficulty repeating the three words given verbally during the mental status exam, but was unable to recall any of the words approximately five minutes later. (AR 440.) Howard observed that during the evaluation, Plaintiff appeared anxious and was easily distracted by sounds outside the evaluation room. Plaintiff's thought process appeared linear and did not demonstrate evidence of psychotic thought process. (AR 441.) Plaintiff reported to Howard that he was depressed and anxious and had a labile mood with irritability and difficulty with concentration. (*Id.*) In terms of cognitive functioning, Howard found that Plaintiff's overall cognitive abilities, verbal comprehension, perceptual reasoning, immediate memory, ability to learn and recall auditory information, and his ability to learn and recall visual information were in the average range, that his working memory appeared in the high average range, and that his processing speed appeared in the low average range. (*Id.*) Howard concluded that Plaintiff showed mild impairment in his ability to understand and carry out simple instructions and tasks, as well as mild impairment as the instructions and

tasks become more complex. Howard further found that Plaintiff demonstrated mild to moderate impairment in his ability to attend to and concentrate on usual work situations, moderate to marked impairment in his ability to interact effectively with supervisors, co-workers, and the public, and mild impairment in his pace, persistence of tasks, ability to perform activities within a schedule and to maintain regular attendance. Howard also found that Plaintiff's ability to adapt to changes in a working environment appeared moderately impaired. (AR 442.) The ALJ gave great weight to Howard's opinion, finding that it was based on the results of an examination and was consistent with the medical evidence in the record. (AR 33.)

State Agency psychological evaluator R. Lee, M.D., opined that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (AR 91.) State Agency psychological evaluator Heather Barrons, Psy.D opined that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (AR 118.) The ALJ only gave some weight to these opinions because Plaintiff had been hospitalized due to his symptoms. (AR 34.)

At the hearing, the vocational expert testified that an individual who was unable to consistently concentrate and focus for two-hour blocks of time would not be to sustain gainful employment. (AR 76.)

**ANALYSIS**

**A.  Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record

as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. 20 C.F.R. § 20 C.F.R. 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(f)(1). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* at 404.1520(e) and (g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. *Id.*

### C. Substantial Evidence in the Record Does Not Support the ALJ's Decision.

The Court finds that the ALJ failed to articulate specific and legitimate reasons based on substantial evidence in the record for rejecting the opinions of Plaintiff's treating psychiatrist, Sastry. The Ninth Circuit has "developed standards that guide the analysis of the ALJ's weighing of medical evidence." *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008). The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When weighing the opinions of different physicians, "the opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, the opinions of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). Treating physicians are afforded greater weight because they are in a better position to know and observe the patient as an individual. *Lester,* 81 F.3d at 830. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. *See Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. *Id.* The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by

7

adequate explanation, among other things. 20 C.F.R. § 416.927(c)(3)-(6). An ALJ errs when the ALJ rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Here, the ALJ erred in failing to give specific, legitimate reasons for rejecting Sastry's detailed opinions that Plaintiff's mental health symptoms result in Plaintiff's becoming overwhelmed emotionally in otherwise benign workplace settings, that Plaintiff has trouble focusing on seemingly simple tasks, that his mental health symptoms prevent him from maintaining even part-time low-level manual labor, and that he becomes overwhelmed with any task requiring his concentration for more than fifteen minutes at a time. Because Sastry is a treating physician, at a minimum, the ALJ was required to provide "specific and legitimate reasons" for discounting Sastry's opinion on these issues. *See Carmickle*, 533 F.3d at 1164. Here, the ALJ completely failed to address Sastry's medical opinions. Instead, he rejected all of Sastry's opinions on the basis that they exceeded the expertise of the physician and were reserved to the Commissioner. Presumably, the ALJ was referring to Sastry's opinion that Plaintiff is disabled and could not hold any meaningful job, which are opinions which are reserved to the Commissioner. *See* SSR 96-5p. Because the ALJ failed to address Sastry's medical opinions regarding Plaintiff's limitations, the ALJ did not satisfy his obligation to provide specific and legitimate reasons for rejecting such opinions.

Moreover, this error was not harmless. *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006) (a court is precluded from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination."). At the hearing, the vocational expert testified that gainful employment for a person who is "unable to consistently concentrate and maintain focus for two-hour blocks of time" does not exist. (AR 76.) If Plaintiff must take breaks every 15 minutes, there are no jobs available for him, and he is disabled.

**D.     ALJ Erred in Failing to Consider Treating Physician's Opinion on Disability.**

8

The Court also finds, as a separate and independent reason for reversal, that the ALJ failed to consider Sastry's opinions in compliance with Social Security Ruling 96-5p. Although the ultimate determination of whether an individual is "disabled" is reserved to the Commissioner, the ALJ must "carefully consider medical source opinions about any issue, including opinions that are reserved to the Commissioner." *Titles II & XXI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5p (S.S.A. July 2, 1996), 1996 WL 374183, *2. As the Social Security Ruling makes clear:

> [O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. *If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.*

SSR 96-5p, 1996 WL 374183 at *3 (emphasis added). Moreover, if the basis for an opinion from a medical source on an issue reserved to the Commissioner is not clear, the ALJ is required to "make every reasonable effort to recontact such source[] for clarification." SSR 96-5p, 1996 WL 374183 at *2.

Here, the ALJ simply rejected Sastry's opinion without evaluating the evidence in the record to determine if the evidence supported that opinion and without contacting Sastry to clarify the opinion. The ALJ failed to do so and instead rejected Sastry's opinion solely because it was on a matter reserved to the Commissioner. The ALJ erred in simply rejecting Sastry's opinion without examining the medical record to see if support for his opinion existed and without contacting Sastry for clarification.

**CONCLUSION**

Accordingly, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion. The Court HEREBY REMANDS this matter for full consideration of

///

///

9

Sastry's opinions. To the extent, on remand, the ALJ finds that the bases for Sastry's opinion that Plaintiff is disabled is unclear, the ALJ shall make every effort to recontact Sastry for clarification.

**IT IS SO ORDERED**.

Dated: September 13, 2019

_____
SALLIE KIM
United States Magistrate Judge